IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD SNYDER,                               No   C-03-4992 VRW

      Plaintiff,                              ORDER

      v

DEPARTMENT OF DEFENSE ET AL,

      Defendants.
_____/

Plaintiff seeks relief under the Freedom of Information Act (FOIA) for the alleged failure of Department of Defense and Defense Logistics Agency (DLA) to release information he has requested. Based on the highly technical dimensions of this FOIA case, the court reappointed P Michael Robson to serve as trial master and determine whether the government has complied with plaintiff's request and, if it has not, to set forth what the government must do to attain compliance. Doc #101.

//
//

On January 9, 2007, trial master Robson submitted his report. Doc #105. Plaintiff filed a timely motion to adopt the findings of the trial master, Doc #106, and the government filed an objection to the report on January 29, 2007, Doc #107. For reasons discussed below, the court OVERRULES the government's objection and ADOPTS the trial master's findings of fact pursuant to FRCP 53.

I

Plaintiff is a stockholder and employee of Total Procurement Systems, Inc (TPS), which is "in the business of providing Government procurement information." Snyder Decl (Doc #30). From the parties' papers, the court understands this to mean that TPS gathers information from various sources, primarily within the government and repackages the data for sale to businesses seeking government contracts. Apparently in connection with this activity, plaintiff initiated the FOIA requests at issue here.

As described in plaintiff's complaint, he requested "BSM information," Compl (Doc #1) ¶¶4-6, "TIR information," id ¶¶7-10, and the "Commercial and Government Entity (CAGE) Code file," id ¶¶11-16. According to DLA's FOIA officer, Susan Salus, "BSM" refers to "Business Systems Modernization, * * * a multi-year information technology project designed to re-engineer and upgrade DLA's legacy logistics system"; and "TIR" refers to the "Total Item Record." Salus Decl (Doc #27) ¶3, 5. The court understands this computer-encoded data to be relevant to government contracting. Plaintiff claims that the BSM and TIR information has been withheld in violation of FOIA.

//

In the typical FOIA lawsuit, the government agency has refused to produce the requested information. The situation here with respect to the BSM and TIR information is somewhat different. Plaintiff requested the BSM information on August 18, 2003. Salus Decl (Doc #27) ¶3; Compl (Doc #1) ¶4. After some intervening events not relevant here, plaintiff took an administrative appeal and DLA sent plaintiff a letter on October 14, 2003, explaining that the data he sought were available on DLA's web site. Salus Decl (Doc #27) ¶4; Compl (Doc #1) ¶6; id Ex 3 (October 14, 2003, letter). Plaintiff contends that the BSM information from the DLA's web site is incomplete or corrupted. Snyder Decl (Doc #30) ¶14.

Likewise, plaintiff requested the TIR information on August 18, 2003. Salus Decl (Doc #27) ¶5; Compl (Doc #1) ¶7. After intervening events that included an administrative appeal, a computer file allegedly containing the TIR information was sent to plaintiff on September 24, 2003, and DLA's FOIA office considered the request satisfied. Salus Decl (Doc #27) ¶5; Compl (Doc #1) ¶10, Ex 5. While Salus insists there was no communication with her office regarding the TIR information after September 24, 2003, Salus Decl (Doc #27) ¶5; Supp Salus Decl (Doc #28) ¶5, plaintiff asserts that he communicated with Salus by voicemail on October 10, 2003, expressing his dissatisfaction with the TIR information provided to him, Snyder Decl (Doc #30) ¶24. As with the BSM information, plaintiff contends the TIR information that the government sent to him was not formatted as he expected it to be (i e, it was corrupted). Id ¶15.

//

3

On April 13, 2003 and June 17, 2004, the parties filed cross-motions for summary judgment.  Pl Mot (Doc #14); Defs Opp (Doc #31); Pl Reply (Doc #33); Defs Mot (Doc #18) (renoticed by Doc #26); Pl Opp (Doc #29).  In these motions, the parties offered multiple and conflicting explanations for plaintiff's troubles.  Such disputes included whether the data are in fact corrupt, how they became corrupt and whether a lack of technical sophistication on plaintiff's part is to blame for his troubles.  Ultimately, the court concluded that the corruption question constituted a material dispute of fact that logically preceded a determination whether the government has or has not transmitted to plaintiff certain components of the BSM and TIR data.  Doc #44.  With respect to the BSM and TIR data, the court observed that the issues require an intimate understanding of the computer files' creation, transmission and interpretation -- a factual issue the court was unable to resolve on the summary judgment papers.  Id.

In view of the technical complexity of these issues, the court designated P Michael Robson to serve as trial master and to make factual findings regarding two issues related to plaintiff's FOIA request.  Master Appoint (Doc #65-1).  Specifically, the trial master was appointed to make findings of fact on the following issues:

(1) Whether defendants provided to plaintiff (or directed him to a website containing) a corrupt or incomplete computer file and refused to provide the BSM system file as requested in plaintiff's August 18, 2003, FOIA request.

(2) Whether defendants provided to plaintiff a corrupt or incomplete file in response to his September 17, 2003, FOIA request for the TIR file.

Id at 2:23-28.

4

On July 25, 2005, the court received a report containing the trial master's findings on these issues. Master Rep (Doc #75). Regarding the first issue, the trial master found that plaintiff "validly established his claim that the BSM system [file] supplied to him was incomplete." Id at 4:23-24. On the second issue, the trial master concluded that plaintiff had "established his claim that the TIR file was corrupt." Id at 5:23-24. Plaintiff filed a timely motion to adopt the findings of the trial master. Doc #78. The government filed an objection to the trial master's findings on August 15, 2005, arguing that the trial master adopted unreasonable procedures and made substantively erroneous factual findings. Obj Master (Doc #79).

On September 8, 2005, the court overruled the government's objections and adopted the trial master's findings of fact pursuant to FRCP 53. Doc #84. In doing so, the court noted that any shortcoming in the trial master's procedures stemmed from the government's failure to cooperate with the trial master. Doc #84. The government, for example, did not provide the trial master with the information he requested, namely a copy of the TIR file. Master Rep (Doc #75) at 5:20-21. According to the trial master, the government never provided a straight answer whether the missing BSM information was on the government's computer system. Id at 4:18-22. The trial master also noted that the government's answers to his queries "tended to be delayed and [circumlocutious];" indeed he chided the government for being "less than forthright" in its responses. Id at 3:4-6.

On September 21, 2005, plaintiff filed a "motion for summary judgment for the Total Item Record (TIR) file and the

missing (BSM) information," requesting the court to issue its final order requiring the government, *inter alia*, to provide uncorrupted versions of the files that plaintiff had requested. Doc #85 at 1. The government opposed the motion and filed a counter-motion for summary judgment, contending that a "recent re-transmission of the [relevant] file to plaintiff" renders this case moot and that it was "clear that the file plaintiff previously received was the precisely [sic] the information the government possessed." Doc #87 at 2. The government also provided detailed instructions for plaintiff to access the relevant files. See Doc #90 (Francis Decl).

At a December 8, 2005, hearing, plaintiff admitted that he had not followed the steps in the Francis declaration. Doc #97 (December 8, 2005, Transcript), at 6:21-23. The court thus ordered plaintiff "to practice the steps contained in the Francis declaration [to obtain the information from the BSM website] and then report [the results] to the court" and ordered the government to submit a declaration indicating the TIR file was provided in binary and wrap format. Id at 2:15-3:7, 7:1-3, 17:19-22.

Plaintiff then submitted a declaration stating "information [was] missing from the BSM system that [was] part of the original FOIA request," Doc #94 (Snyder Decl), ¶ 3, "[n]one of the other missing pieces of information requested in the FOIA request were [sic] on the website as claimed," id, ¶ 17, "[and the TIR] file as sent by the defendant was not wrapped," id, ¶ 18. The government submitted declarations stating "the TIR file transmitted to [plaintiff was] the same as the file that [was] stored by the government in its computer," Doc #95 (Greger Decl), ¶1, and "the

6

information sought by [plaintiff was] available on the website, even if not in the specific form he now is requesting," Doc #96 (Francis Decl), ¶1.

On August 9, 2006, after a period of inactivity in the case, the court ordered the parties to submit a written status report by September 8, 2006, describing whether the underlying issues in the dispute had been resolved.  Doc #98.  If disputes remained, the order instructed the parties to show cause why trial master Robson should not be appointed again to determine whether the government had complied with the court's mandate requiring submission of the FOIA requests.  Id.

Plaintiff and the government submitted their status reports on September 8 and September 12, 2006, respectively.  Doc ##99, 100.  Although neither report clarified the issues, they both demonstrated that disputes remain.  Accordingly, the court reappointed trial master Robson with the following instructions:

> determine whether the government has complied with the court's mandate requiring submission of the FOIA requests.  If the government is not in compliance, the court instructs the special master to describe why the government's efforts to date are insufficient and to set forth what the government must do to attain compliance.

Doc #101 at 3:13-18.  On January 9, 2007, trial master Robson submitted his report.  Doc #105.  Plaintiff filed a timely motion to adopt the findings of the trial master, Doc #106, and the government filed an objection to the report on January 29, 2007, Doc #107.

It is worth mentioning that throughout this litigation the court has strongly encouraged the parties to direct their energies at alternative dispute resolution -- such as arbitration

7

before a technically sophisticated arbitrator -- because a litigated resolution would likely consume considerable resources. The parties, alas, rejected the court's call for ADR; hence, the court turns to the merits of this case once again.

## II

To prevail in a FOIA suit, 5 USC § 552(a)(4)(B) provides that a plaintiff must show "that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'  Even though these requirements are labeled "jurisdictional," they are in practice the merits of the FOIA suit.  Judicial authority to devise remedies and enjoin agencies can only be invoked, under the jurisdictional grant conferred by § 552, if the agency has contravened all three components of this obligation." Kissinger v Reporters Committee for Freedom of the Press, 445 US 136, 150 (1980).  Two of the three Kissinger elements are obviously undisputed:  The information at issue is in the possession of a government agency, and, as there has been no assertion of a FOIA exemption, any withholding would be improper.  Thus the only issue is whether information has been withheld.

In a FOIA case, "[t]he trial is held in US District Court with the district court judge as the trier of fact.  There is no provision for a trial by jury under the FOIA." Litigation under the Freedom of Information Act, 50 Am Jur Trials 407, § 34.  Under FRCP 53(a)(1)(B), the court may appoint a master to "hold trial proceedings and make or recommend findings of fact on issues to be decided by the court without a jury."  Rule 53 is thus properly invoked in a FOIA case.

As discussed above, the court has already adopted the trial master's first report, thereby finding that (1) "the BSM system [file] supplied to [plaintiff] was incomplete," Doc #75 at 4:23-24, and (2) "the TIR file was corrupt." Id at 5:23-24. With these factual findings in mind, the court turns to the trial master's second report, which the court reviews de novo. See FRCP 53(g)(3).

The government asserts that the court should reject the trial master's findings because (1) it would require "unjustifiable time and cost" to create the BSM file that plaintiff requests and (2) it would require special procedures to wrap the TIR file. Doc #107.

Both of the government's arguments are misplaced. The nature and amount of fees to be assessed in responding to a FOIA request have no bearing on whether agency records have been "withheld." See 5 USC § 552(a)(4)(B). Absent exceptional circumstances, release of information is required unless it falls under one of nine statutory exemptions set forth in 5 USCS § 552(b). Needless to say, the prospect of compliance expenses is not one of those exceptions, especially considering the average cost per request approached $1,000 in 2006. See DOJ, <u>FOIA Report for Fiscal Year 2006</u>. Indeed, the government's theory — that costs exempt compliance — would undercut the entire FOIA regime.

To be sure, costs are not irrelevant, but the FOIA statute plainly contemplates this issue: "each agency shall promulgate regulations, pursuant to notice and receipt of public comment, specifying the schedule of fees applicable to the processing of requests under this section and establishing

9

procedures and guidelines for determining when such fees should be waived or reduced." 5 USC § 552(a)(4)(A)(i). These fees are limited to "the recovery of only the direct costs of search, duplication, or review." 5 USC § 552(a)(4)(A)(iv). Hence, the government may assess costs after providing the relevant agency records. Yet these procedures do not absolve the government of its duty to comply with plaintiff's request. Accordingly, the government's objection is once again OVERRULED and the court adopts the trial master's findings of fact pursuant to FRCP 53.

Additionally, in the court's order for the parties to show cause why trial master Robson should not be appointed again, the court noted that the costs of the second report would "be borne by the party found responsible for the delay in this case." Doc #98. In his second report, trial master Robson observed:

> Whenever I put questions to the plaintiff, I received answers promptly. In the same vein, the plaintiff promptly mailed me his court-ordered status report as requested.* * * By contrast, when I put questions to the [government] the answers were often delayed. * * * [A]lthough [the government] did supply the TIR file once during this period, that transmission appeared to be flawed and the [government] was never able or willing to retransmit.

Doc #105 at 4:4-15. The trial master's experience is not surprising; as the court previously concluded with respect to the first report, "any perceived shortcoming in the trial master's procedures stems from the government's failure to cooperate with the trial master." Doc #84 at 3:28-4:2. Accordingly, the court concludes that the government is responsible for the delay in this case and shall bear the cost incurred by the trial master in connection with the second report.

10

### III

Having established the government's legal requirements, the court turns to crafting a remedy. Because the enforcement procedure under FOIA is by injunction, the jurisdiction conferred is one in equity. The court, therefore, retains broad discretion to establish a remedy in accordance with fairness and efficiency. A cursory review of the present record makes clear that the court must closely oversee any injunction it issues in order to ensure compliance, as the parties have displayed a marked unwillingness to cooperate in this dispute.

Accordingly, on April 30, 2007, or at such other time as the parties may arrange with the courtroom deputy, Ms Cora Klein, 415-522-2039, the court HEREBY ORDERS:

(1) Before 10:00 am, the government shall transfer (a) the "set aside" information extracted from the BSM file and (b) the TIR file in wrapped format and uncorrupted. Both of these files should conform to the directions set forth in the second trial master's report.

(2) Upon transfer, trial master Robson shall inspect the files on plaintiff's computer. At 1:30 pm that day, trial master Robson shall advise the court clerk by email or phone whether the government has complied with the trial master's second report.

IT IS SO ORDERED.

*/s/ Vaughn R Walker*

VAUGHN R WALKER

United States District Chief Judge