**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RICHARD SNYDER,                          No   C 03-4992 VRW

      Plaintiff,                          ORDER

      v

DEPARTMENT OF DEFENSE et al,

      Defendants.
_____/

13

14

15

16

17

18

19

20

      On October 11, 2007, the court heard oral argument
regarding plaintiff's FOIA request, filed in 2003.  Plaintiff
asserted that his request had not been fulfilled, while defendants
asserted that they had turned over everything they could reasonably
provide.  On October 12, 2007, the court revoked the appointment of
the trial master because he had failed to "expedite the conclusion
of these proceedings."  Doc #66 at 1.  In an attempt to clarify the
issues, the court ordered plaintiff to specify precisely which
portions of his FOIA request had not been satisfied.  Doc #66.

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

1    In lieu of rehashing the details of the case, the court

2 recounts only what is absolutely necessary to decide the pending

3 motion.  The court has determined previously in this case that

4 although the summary judgment standard in FOIA cases is not well-

5 developed, the court must use the ordinary summary judgment

6 standard in this relatively unique case.  Doc #44.  Accordingly,

7 "summary judgment will not lie if the dispute about a material fact

8 is 'genuine,' that is, if the evidence is such that a reasonable

9 jury could return a verdict for the nonmoving party."  <u>Anderson v</u>

10 <u>Liberty Lobby</u>, 477 US 242, 248 (1986).  "If the party moving for

11 summary judgment meets its initial burden of identifying for the

12 court the portions of the materials on file that it believes

13 demonstrate the absence of any genuine issue of material fact, the

14 nonmoving party * * * must produce at least some 'significant

15 probative evidence tending to support the complaint.'"  <u>TW Electr</u>

16 <u>Serv, Inc v Pacific Electr Contractors Assn</u>, 809 F2d 626, 630 (9th

17 Cir 1987), quoting <u>First National Bank v Cities Serv Co</u>, 391 US

18 253, 290 (1968).  In FOIA cases, "the court may forego [sic]

19 discovery and award summary judgment on the basis of affidavits

20 which are relatively detailed, non-conclusory, and apparently

21 submitted in good faith in the absence of any significant basis

22 presented by the plaintiff for questioning their reliability."

23 <u>Shurberg Broadcasting of Hartford, Inc v FCC</u>, 617 F Supp 825, 831

24 (DDC 1985); <u>Gardels v CIA</u>, 689 F2d 1100, 1106 (DC Cir 1982);

25 <u>Halperin v CIA</u>, 629 F2d 144, 148 (DC Cir 1980).

26    In this case, plaintiff's basic contentions are that

27 defendants failed to provide some data that plaintiff requested and

28 that some data turned over were "corrupt."  Plaintiff makes these

**2**

**United States District Court**
For the Northern District of California

1  assertions in opposition to defendants' motion for summary judgment

2  and in his own cross-motion for summary judgment.  The latter

3  motion was noticed improperly in violation of the local rules and

4  is, therefore, denied.  That denial although based on a procedural

5  misstep works no substantive harm to plaintiff as all his arguments

6  appear to have been made in opposition to defendants' summary

7  judgment motion and considered in that context.  In any event,

8  because defendants' affidavits have made a "relatively detailed,

9  non-conclusory" showing of compliance with plaintiff's requests,

10  the burden rests with plaintiff to produce "significant probative

11  evidence" that defendants have not, in fact, complied.  <u>Shurberg</u>,

12  617 F Supp at 831; <u>TW Electrical</u>, 809 F2d at 630.  Although the

13  matter is not free from some doubt due to the abstruse nature of

14  plaintiff's claims and defendants' response, it appears that

15  plaintiff has failed to make the required showing.

16

17                                    I

18       First, plaintiff claims he does not yet have a valid copy

19  of the so-called TIR data.  The data exist in both "coded" and

20  "decoded" versions.  Plaintiff prefers the coded format, but

21  apparently he will accept either.  The court surmises - although

22  the parties' submissions are unclear - that once defendants provide

23  either the coded <u>or</u> decoded data, then the TIR FOIA request is

24  fulfilled.  Defendants believe they have sent the TIR data in <u>both</u>

25  "coded" format and "decoded" format.  Plaintiff responds that the

26  "coded" as well as the "decoded" data defendants have sent him are

27  "corrupted."  It is unclear what plaintiff means when he says the

28  data are "corrupted."

3

**United States District Court**
For the Northern District of California

1      The court apprehends that if defendants produce properly

2   requested information in a format that has been recast in some

3   fashion to make it undecipherable, the response would be improper

4   and the information "corrupt."  This appears to be plaintiff's

5   contention.  Information that is maintained in a format that the

6   requester cannot discern because of his own limitations would not

7   merit the "corrupt" characterization.  It would thus appear,

8   therefore, if the requested information is produced in the manner

9   and format in which the agency maintains it, that response should

10  not be deemed inadequate unless the requester can show that its

11  unreadability is the product of some action by the agency.

12      The "decoded" data that are relevant here include data in

13  what is referred to as "Segment M."  Plaintiff claims Segment M is

14  corrupted because he cannot read it.  Plaintiff claims he cannot

15  read the data because Segment M does not "match" the "record

16  layout," which is a file that allows someone to interpret the

17  Segment M data.  Because the two sets of data do not "match,"

18  plaintiff believes there is a "data error."  More specifically,

19  plaintiff asserts that each datum in Segment M ends with letters,

20  whereas each corresponding datum in the record layout ends with

21  numbers.  Doc #122 at ¶77; Doc #125 at ¶17.  This causes an error

22  because both should end in numbers, and plaintiff claims he cannot

23  read the data in Segment M.  Defendants dispute that there is a

24  data error; in support of that assertion, defendants offer a

25  declaration from a technician that responds to plaintiff's

26  letters/numbers problem and states the following: "Mr Snyder is

27  incorrect.  There is no data error here and the file does adhere to

28  the record layout."  Doc #122 at ¶78.

**4**

**United States District Court**
For the Northern District of California

1    The "coded" version is called "Segment V."  It is unclear

2  why plaintiff cannot read that data.  From the best the court can

3  tell, Segment V is unreadable because plaintiff believes the data

4  in "Segment H," "Segment K" and "Segment W" are "corrupt."

5  Specifically, plaintiff claims that "Segment H" includes "extra

6  spaces" which prevent him from viewing the data.  He claims also

7  that "Segment K" and "Segment W" include "pipe characters" which

8  prevent him from viewing the data. [One of defendants' technical

9  experts declares that the problem is in Segment W, whereas a

10  different government technical expert declares that the problem is

11  in Segment K.  Compare Doc #122 at ¶68, with Doc #124 at ¶20.  That

12  discrepancy introduces confusion but does not appear material.]

13  According to defendants' submissions, the "pipe characters" problem

14  may have been solved.  Doc #122 at ¶70; Doc #124 at ¶20; Doc #125

15  at ¶12.  As for the "extra spaces" in Segment H, defendants state

16  that they do not see any extra spaces in the data, and thus

17  defendants aver that Segment H is not corrupt.  Defendants'

18  position seems to be that because plaintiff has not complained to

19  them about the extra spaces since July 2007, the problem is moot.

20  Doc #124 at ¶24; Doc #122 at ¶70.

21    If it is true that both issues with the "coded" data are

22  in fact solved, then the Segment V file should not be corrupt.

23  Again, the parties were not clear, but as far as the court can

24  tell, if the Segment V file is not corrupt, then plaintiff does not

25  need the Segment M data and the FOIA request is fulfilled.

26    Plaintiff has not stated with any specificity that either

27  the "pipe characters" or "extra spaces" are still a problem.

28  Instead, he says merely that the "NSN item text description" data

United States District Court
For the Northern District of California

1   are corrupt.  The court is unable to discern from plaintiff's vague

2   statement a material disputed issue, especially with respect to

3   Segment V.  Because plaintiff has not offered any significant or

4   meaningful contradictory evidence that defendants have not complied

5   with his request, the court must find that summary judgment for

6   defendants is appropriate.

7         Because plaintiff's FOIA request for TIR data is

8   satisfied by receipt of a valid copy of either the Segment M data

9   or the Segment V/H/K/W data and defendants have appeared to have so

10  complied - or perhaps, more precisely, plaintiff has not shown a

11  lack of compliance - summary judgment for defendants is

12  appropriate.

13

14                               II

15        Second, plaintiff claims that he has not received certain

16  "BSM data" for "solicitations over $100,000."

17        The parties do not dispute that defendants have not

18  provided the BSM data for solicitations over $100,000.  Instead,

19  defendants argue that they should be excused from compliance.

20        Defendants assert that the requested data are not

21  available in a format that can be delivered to plaintiff.

22  Defendants argue that the only way to fulfill the FOIA request is

23  to create a new data file.  This new file must be created by

24  scanning multiple existing large files and extracting the relevant

25  BSM data.  Defendants contend that they would need to write a

26  special software program to perform this "extract" function;

27  defendants assert that to create the software program would require

28  108 man-hours at a total cost of $5400.

6

United States District Court
For the Northern District of California

1    Plaintiff refuses to pay the $5400 because he claims that
2  it is completely unnecessary to "extract" any data from anything.
3  If any "extraction" needs to be done, then plaintiff wants
4  defendants to send him the underlying data so that plaintiff can
5  "extract" whatever he sees fit in the manner he sees fit.
6  Plaintiff claims that his original FOIA papers requested exactly
7  that.  Plaintiff claims he requested the source BSM data as those
8  data exist on defendants' computer system, in whatever format that
9  may be.  As the court interprets plaintiff's argument, and by way
10  of analogy to the world of journalism, plaintiff argues that he
11  would rather see the entire AP and Reuters newswires and decide for
12  himself what to read rather than watch the nation's top stories on
13  CNN.  Plaintiff appears to believe the matter is that simple.
14  Defendants contend that government databases do not operate that
15  way, the source data cannot be simply copied and given to plaintiff
16  and the relevant data must be extracted first.  See Doc #127 at
17  3:17-19.

18    The question is then whether new computer programs are
19  actually necessary to produce the data.  The trial master
20  questioned the necessity of these new computer programs in his
21  second report.  Doc #105 at 7:7:22.  Based on his own technical
22  experience, the trial master expected the data to reside in a file
23  within the BSM system.  Doc #105 at 7:9-10.  Therefore, the trial
24  master suggested that defendants should simply produce that file.
25  Doc #105 at 7:11-12.  The trial master, relying on his own
26  technical experience, stated that extracting data sometimes
27  requires unjustifiable time and cost, but that computers today
28  should be "equipped with sophisticated data-base software and/or

**7**

**United States District Court**
For the Northern District of California

1   generalized query utilities, like SQL.  To extract selected data

2   from a file and to define a few keys could take MINUTES, rather

3   than HOURS, and certainly not DAYS."  Doc #105 at 7:15-22.

4           The trial master appointed in this case was attempting to

5   resolve this precise dispute.  Doc #141 Exh 3; Doc #126 Exh 3.  In

6   a series of exchanges with defendants' counsel right up until his

7   involvement with the case ended, he inquired why defendants needed

8   to write a new software program.  The trial master resolved certain

9   points of confusion and made at least some progress in resolving

10  this matter, and he believed that plaintiff was correct and that

11  defendants' proposed extraction software program was unnecessary.

12          Defendants did not contact plaintiff and attempt to build

13  on the discussions with the trial master, and they submit no

14  declarations rebutting the trial master's belief that defendants'

15  proposed extraction software program is unnecessary to fulfill the

16  FOIA request.  Still, the trial master's statements that he did not

17  comprehend defendants' assertion that a new software program is

18  necessary do not amount to a reasonable denial of defendants'

19  position.  See Doc #126 Exh 3.  Plaintiff has offered only

20  conclusory speculation rather than "contradictory evidence."

21  Halperin, 629 F2d at 148.

22          It appears that compliance with plaintiff's request

23  requires an extraction of data that defendants are unable to

24  accomplish absent the preparation of new software.  Plaintiff thus

25  appears to have the choice of tendering the funds necessary to do

26  so or foregoing the extracted data.  Having failed to offer to pay

27  for the cost of the extraction software, summary judgment for

28  defendants appears in order.

United States District Court

For the Northern District of California

III

Third, defendants claim that they have solved the problem that existed with the so-called "non-NSN" data.  Plaintiff does not dispute that the problem has been solved.  Instead, plaintiff complains that defendants delayed in fixing the problem.  This complaint is insufficient to defeat defendants' motion for summary judgment.  Summary judgment is granted as to the "non-NSN" data.

IV

Defendants' motion for summary judgment is GRANTED.  The clerk is directed to close out the file and terminate all pending motions.

IT IS SO ORDERED.


VAUGHN R WALKER

United States District Chief Judge

**9**